UNITED STATES of America and
James W. Blum, Special Agent,
Internal Revenue Service,

v.

MAHADY & MAHADY, a partnership,
and Henry J. Mahady, as a partner of
Mahady and Mahady, Appellants.

No. 74–1713.

United States Court of Appeals,
Third Circuit.

Argued Oct. 25, 1974.

Decided March 7, 1975.

Robert Margolis, Herbert L. Levy, Bethlehem, Pa., for appellants.

Scott P. Crampton, Asst. Atty. Gen., Ernest J. Brown, Gilbert E. Andrews, Robert E. Lindsay, Carleton D. Powell, Washington, D. C., for appellees; Richard L. Thornburgh, U. S. Atty., Thomas A. Daley, Asst. U. S. Atty., Pittsburgh, Pa., of counsel.

## OPINION OF THE COURT

Before KALODNER, GIBBONS and WEIS, Circuit Judges.

KALODNER, Circuit Judge.

Were the Fifth Amendment rights of the appellant Henry J. Mahady ("Mahady") violated when the district court ordered him to comply with an Internal Revenue Service summons directing him to give testimony and produce records with respect to all financial transactions of his law partnership with a corporate client under investigation as to its tax liabilities?

1. The summons was issued pursuant to the provisions of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7602.

2. The enforcement petition was filed pursuant to the provisions of the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 7402(b) and 7604(a).

3. "40. Q—Did you, yourself, have any control over the records of the partnership?

. . . . .

The instant appeal presents the stated question. Its background facts may be summarized as follows:

On October 12, 1973, Special Agent James W. Blum of the Internal Revenue Service, in the course of his investigation of the tax liabilities of Euthenics Systems Corporation ("Euthenics"), issued a summons [1] on the law partnership of Mahady & Mahady, and its surviving partner Mahady to appear October 26, 1973 and

"Give Testimony and Produce Records Regarding All Financial Transactions with Euthenics Systems Corporation and/or its Officers or Agents. The Records are To Include But Are Not Limited To: (a) Details of Work Performed (b) Books of Original Entry Regarding the Recording of Monies Received (c) Correspondence with the Company, Its Agents or Officers." (Appendix, at 6A).

On December 7, 1973, Blum filed a petition for enforcement of the summons in the district court [2] alleging its noncompliance.

On December 10, 1973, the district court issued a rule to show cause ordering appellants to appear December 21, 1973. Mahady appeared before Blum on December 21, 1973. He then failed to provide Blum with the summoned records and further refused to answer Blum's questions relating to his or his partnership's dealings with Euthenics and/or its predecessor Michael J. Baker, Inc., asserting his Fifth Amendment privilege against self-incrimination and the attorney-client privilege.

The questions which Mahady refused to answer are set forth in the margin.[3]

"43. Q—. . . Mr. Mahady, did the partnership of Mahady and Mahady maintain a cash receipts or an income book?

. . . . .

"44. Q—Mr. Mahady, as far as recording income and expenses of the partnership, what books were maintained?

. . . . .

"45. Q—Mr. Mahady, when income was received by the partnership of

They dealt in particular with (1) the receipt by the Mahady partnership of a $2,000.00 personal check of Michael Baker, Jr., dated April 13, 1971, for "services rendered," which was accompanied by Baker's written request that he be sent a bill for his "records"; (2) the Mahady partnership's April 15, 1971 billing of Baker for $2,000.00 for "legal services"; and (3) the deposit by the Mahady partnership of the Baker check in the account of "Citizens for Paul Mahady."

On March 19, 1974, the district court held a hearing on its rule to show cause why the summons should not be enforced. It was developed at this hearing that Euthenics had by letter advised Mahady that it did not desire him to assert the attorney-client relationship. Mahady, however, adhered to his Fifth Amendment ground for his refusal to answer Blum's questions respecting his

or his partnership's dealings with Euthenics and its predecessor Baker, Inc.

On July 3, 1974, the district court filed an Order directing Mahady to produce his partnership's records in accordance with the Internal Revenue Service summons, and to "testify fully in all matters relevant thereto." The instant appeal followed on July 18, 1974.

On review of the record we are of the opinion that the Order of the district court must be affirmed insofar as it directs production of the partnership records, and reversed as to its command to Mahady to "testify fully in all matters relevant thereto."

■ Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974), aff'g In re Grand Jury Investigation, 483 F.2d 961 (3d Cir. 1973), is dispositive of the production of records issue. *Bellis* squarely ruled that a partner in a small

Mahady and Mahady, who recorded the income during the years 1970, 1971 and 1972?

"46. Q—Mr. Mahady, during the years 1970, 1971 and 1972, who was responsible for preparation of the billings to clients?

"49. Q— . . . During the years 1970, 1971 and 1972, did the partnership of Mahady and Mahady have any financial dealings with Euthenics Systems Corporation, formerly known as Michael Baker, Jr., Inc., any of its officers or any of its agents?

"50. Q—Mr. Mahady, on April 15, 1971, did the law firm of Mahady and Mahady issue an invoice to the firm of Michael Baker, Jr., Inc., in the amount of $2,000, the explanation given 'In re legal services rendered, to conferences, consultations, research, trips to Harrisburg, etc.'

"51. Q—Mr. Mahady, on or about April 14 did you receive a letter signed 'Michael Baker, Jr.,' addressed to you, Henry Mahady, Esquire, Mahady and Mahady, 119 Maple Avenue, Latrobe, Pennsylvania. The contents of this letter are as follows: 'Dear Henry, Confirming our phone conversation of yester-

day, please find attached my check for $2,000, payable to Mahady and Mahady for services rendered. May I please have your invoice for my records. Thank you.'

"52. Q—Mr. Mahady, somewhere between April 13, 1971, and April 19, 1971, did you endorse a check issued to Mahady and Mahady, drawn on the personal account of Michael Baker, Jr., or Myrtle E. Baker in the amount of $2,000?

"53. Q—Mr. Mahady, the $2,000 check just discussed, do you have knowledge that this check was deposited to the Citizens for Paul W. Mahady Account?

"55. Q— . . . Mr. Mahady, did you sign the check discussed in the previous question?

"56. Q—Mr. Mahady, did you cause this check to be deposited to the Citizens for Paul W. Mahady Account?

"57. Q—Mr. Mahady, do you know if the law firm of Mahady and Mahady had more than one transaction with Michael Baker, Jr., Inc., Euthenics Systems Corporation, its officers or its agents, during the period 1970, 1971 and 1972?"

law firm cannot invoke his personal privilege against self-incrimination to justify his refusal to comply with a subpoena requiring production of the partnership's financial books and records, since the partnership, though small, has an institutional identity, and a partner holds the records in a representative, and not a personal, capacity.

In rejecting Bellis' contention that "he has a substantial and direct ownership interest in the partnership records, and does not hold them in a representative capacity," the Court said in relevant part at pages 97–98, 94 S.Ct. at page 2187:

" . . . [W]e believe it is fair to say that petitioner is holding the subpoenaed partnership records in a representative capacity. The documents which petitioner has been ordered to produce are merely the financial books and records of the partnership. . . Petitioner has no direct ownership interest in the records; rather, under state law, they are partnership property, and petitioner's interest in partnership property is a derivative interest subject to significant limitations. See Ellis v. Ellis, 415 Pa. 412, 415–416, 203 A.2d 547, 549–550 (1964)." (footnotes omitted).

The Court stressed in Bellis at 89–90, 94 S.Ct. at 2184, its "consistent view that the privilege against compulsory self-incrimination should be 'limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records.'" as held in United States v. White, 322 U.S. 694, 701, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). (emphasis supplied).

In doing so it further said at page 90, 94 S.Ct. at page 2184:

"White is only one of the many cases to emphasize that the Fifth Amendment privilege is a purely personal one, most recent among them being the Court's decision last Term in Couch v. United States, 409 U.S. [322] at 327–328 [93 S.Ct. 611, 615–616, 34 L.Ed.2d 548]."

Mahady seeks to distinguish Bellis on the ground that the instant case involves "a small family partnership" of four brothers, while Bellis involved a partnership of three non-related individuals. In so doing, Mahady cites the following statement in Bellis at page 101, 94 S.Ct. at page 2189:

"This might be a different case if it involved a small family partnership, see United States v. Slutsky, 352 F.Supp. 1105 (S.D.N.Y.1972); In re Subpoena Duces Tecum, 81 F.Supp., at 421 . ,. . " [81 F.Supp. 418 (N.D. Cal.1948)].

Whatever the full import of the quoted statement may be we do not think it applicable in the present context.

What has been said brings us to our holding that the district court's Order must be reversed insofar as it commands Mahady to appear and "testify fully in all the matters relevant" to the partnership records.

The command was premised on the district court's holding in its "Memorandum and Order" that "The Fifth Amendment privilege against self-incrimination is not available to Henry J. Mahady, who is not the object of investigation or prosecution, United States v. Fisher, 500 F.2d 683 (3rd Cir. decided June 7, 1974)."[4] (emphasis supplied).

The district court erred in its stated holding. Fisher, which it cited in support, affords it no nourishment.[5]

4. United States v. Fisher, 3rd Cir., 500 F.2d 683, cert. granted, 420 U.S. 906, 95 S.Ct. 824, 42 L.Ed.2d 835 (1975).

5. In Fisher, taxpayers then under investigation as to their tax liabilities acquired work papers of their accountant relating to their affairs and shortly thereafter delivered them to their attorney; the Internal Revenue Service served a summons upon the attorney for production of the work papers whereupon the taxpayers challenged the summons on the ground that its enforcement would violate their Fifth Amendment privilege against self-incrimination in light of their asserted "ownership" and "possession" of the work papers. The district court rejected the taxpayers' claims and ordered the attorney to produce the summoned work papers, 352 F.Supp. 731, 735 (E.D.Pa.1972), and we affirmed at 500 F.2d 683.

■ The Supreme Court has specifically held that the privilege against self-incrimination may be invoked by a compelled witness *in any proceeding* when his answers to questions "might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).

In so holding the Court said at page 77, 94 S.Ct. at page 322:

"The Fifth Amendment provides that no person 'shall be compelled in any criminal case to be a witness against himself.' *The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal,* where the answers might incriminate him in future criminal proceedings." (emphasis supplied).

■ It is also settled that "[t]he privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute *but likewise embraces those which would furnish a link in the chain of evidence* needed to prosecute the claimant for a federal crime." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (emphasis supplied); cited and applied in Malloy v. Hogan, 378 U.S. 1, 11, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1954), and In re U. S. Hoffman Can Corp., 373 F.2d 622, 628 (3d Cir. 1967).

Hoffman v. United States, *supra,* also held while the privilege "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer," and "his say-so does not of itself establish the hazard of incrimination," it is the initial responsibility of the court "to say whether his silence is justified . . ., and to require him to answer if 'it clearly appears to the court that he is mistaken.'" 341 U.S. at 486, 71 S.Ct. at 818.

*Hoffman* cautioned that "if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee," and "[t]o sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." 341 U.S. at 486–487, 71 S.Ct. at 818.

■ *Hoffman* stressed that the self-incrimination privilege *"must be accorded liberal construction in favor of the right it was intended to secure."* 341 U.S. at 486, 71 S.Ct. at 818. (emphasis supplied).

We, too, have, in prior decisions, stressed that "a heavy duty rests on the judge before whom the privilege is invoked,"[6] and "[t]he trial court should not deem itself to be 'a mere keeper of the ring' in the tradition of the English civil law."[7]

The sum of the Government's position here is that "[t]he burden of establishing the validity of the privilege is on the person claiming the privilege," and that Mahady failed below to establish "some viable nexus between the questions asked and the incrimination which might follow."

■ *Hoffman* negates the Government's contention that Mahady had "the burden of establishing the validity" of his privilege claim. As earlier stated, it imposes on the court the initial responsibility "to say whether his silence is justified." *Hoffman* further specifically cautioned that "if the witness . . . were required to prove the hazard . . . he would be compelled to surrender the very protection which the privilege is designed to guarantee."

The record in the instant case establishes out of the Government's own

---

6. In Re U. S. Hoffman Can Corp., 373 F.2d 622, 628 (3d Cir. 1967).

7. American Cyanamid Company v. Sharff, 309 F.2d 790, 798 (3d Cir. 1962).

mouth, as it were, the possibility of incriminating answers to the questions asked of Mahady.

The Government, at the March 19, 1974 hearing on its rule to show cause why the IRS summons should not be enforced, conceded (1) the aim of the summons was to ascertain whether Euthenics had taken a "justifiable deduction" with respect to the $2,000.00 check given to the Mahady partnership for "legal services" which was deposited in the account of the "Citizens for Paul Mahady" account; and (2) in the event the deduction was "not justifiable" it was conceivable that "further proceedings would be held of a criminal nature." (N.T. page 10, March 19, 1974 hearing).

It merits notation that the Government in urging that Mahady should be compelled to testify, said with respect to Mahady's privilege claim:

"If it should in fact turn out that Mr. Mahady is required to—if he is ordered to testify, if he does in fact incriminate himself in some manner, there is always the option of suppressing any evidence that should be derived from that enforced testimony, if it does in fact violate his Fifth Amendment privilege." (N.T. page 9, March 19, 1974 hearing).

The foregoing statement implies the sub-conscious recognition of the Government of the possibility of self-incrimination in Mahady's replies to the questions asked.

The district court, at the March 19, 1974 hearing, clearly indicated its view that there was ample basis for Mahady's invocation of his privilege albeit it later decided that the privilege did not inure to Mahady because he "is not the object of investigation or prosecution."

In indicating its view as to Mahady's claim of privilege the district court said:

"Now, but under the whole setting here, if a witness claims a privilege on the basis that there may be a tendency to incriminate him, then the reason itself is established because the very purpose of the Government's investigation indicates that indeed if the Government prevails and gets what it wants and its suspicions are verified, then it's reasonable to assume that Mr. Mahady may have been involved in a factitious transaction." (N.T. page 42, March 19, 1974 hearing).

We are in accord with the district court's stated view as to the validity of Mahady's privilege claim, and regret that it did not give it effect in its disposition.

■ Critical questions put to Mahady, if answered, could possibly "furnish a link in the chain of evidence" in a criminal prosecution for violation of federal revenue laws.[8]

It may be noted parenthetically that the Government does not here contend that Mahady was barred from claiming his privilege on the ground assigned by the district court, viz., he was "not the object of investigation or prosecution."

For the reasons stated the Order of the district court will be affirmed insofar as it commands production of the Mahady partnership records, and reversed and vacated insofar as it commands Henry J. Mahady to "testify fully in all the matters relevant thereto," and the cause remanded with directions to proceed in accordance with this Opinion.

---

**8.** 26 U.S.C. § 162(c)(2) (illegal payments made to any person are nondeductible expenses for federal income tax purposes); 18 U.S.C. § 371 (conspiracy to defraud the United States is a criminal offense); and 18 U.S.C. § 1001 (presenting false information to any federal agency constitutes a felony). *Cf.* United States v. Gross, 511 F.2d 910 (3d Cir. 1975).