UNITED STATES of America, Appellant,

v.

Ira Paul CITRON, Appellee.

No. 1178, Docket 88–1035.

United States Court of Appeals, Second Circuit.

Argued May 23, 1988.

Decided Aug. 8, 1988.

John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., David C. James, Dennis E. Milton, Asst. U.S. Attys., Brooklyn, N.Y., on the brief), for appellant.

Jules Ritholz, New York City (Nora E. Plesent, Kostelanetz, Ritholz, Tigue & Fink, New York City, on the brief), for appellee.

Before NEWMAN and PRATT, Circuit Judges, and TELESCA, District Judge.*

JON O. NEWMAN, Circuit Judge:

The United States brings this interlocutory appeal from an order of the District Court for the Eastern District of New York (Jack B. Weinstein, Judge) suppressing evidence in the retrial of Ira Citron on charges that he evaded income taxes for the year 1978. The District Court held that the Government was precluded on collateral estoppel grounds from offering evidence that Citron owned certain stock accounts at E.F. Hutton & Co. and that Citron committed tax law violations for the years 1977 and 1979. Additionally, based on its collateral estoppel ruling, the Court precluded the Government from using the "cash expenditures" method of proving unreported income. We conclude that collateral estoppel does not bar the Government's proof in the retrial because Citron failed to establish that the jury verdict in his first trial necessarily determined the facts at issue in his favor.

## Background

In 1984, Citron was indicted on nine counts of tax law violations for the years 1977, 1978, and 1979. The indictment charged that in each of these years, Citron evaded tax in violation of 26 U.S.C. § 7201 (1982) (counts 1–3), filed false returns in violation of 26 U.S.C. § 7206(1) (1982) (counts 4–6), and aided and assisted his parents in their filing of false returns in violation of 26 U.S.C. § 7206(2) (1982) (counts 7–9). At trial, the Government's case on the evasion and false returns counts consisted primarily of evidence that Citron, a broker at E.F. Hutton, failed to report as his income funds that were deposited in five Hutton stock accounts, as well as interest, dividends, and capital gains earned on these accounts. Though Ira Citron maintained the stock accounts in the names of his parents, Joseph and Rose Citron, the Government contended that the

---

* The Honorable Michael A. Telesca of the United States District Court for the Western District of New York, sitting by designation.

accounts actually belonged to Ira. With respect to the aiding and assisting counts, the Government's proof was that Ira prepared returns for his parents that falsely listed as their income earnings from the Hutton accounts. In response to the Government's evidence, Citron sought to show that the Hutton accounts belonged to his parents and that both his and their returns were therefore accurate. In order to explain the sizable deposits made to the accounts in 1977–79, Citron claimed that his father had accumulated a large cash hoard from which the deposits had been made.

The jury convicted Citron of tax evasion for 1978 (count 2) and filing false returns for 1977 and 1979 (counts 4 and 6). He was acquitted of tax evasion for the years 1977 and 1979 (counts 1 and 3) and of all the aiding and assisting counts (counts 7–9). Pursuant to instructions from the Court, the jury did not reach the 1978 false statement charge because it convicted Citron of the greater offense of evasion for that year.

On a prior appeal, this Court vacated the tax evasion conviction for 1978 and ordered a retrial because the trial judge had erroneously admitted a summary chart. *United States v. Citron,* 783 F.2d 307, 316–17 (2d Cir.1986). Additionally, the Court vacated the convictions for false statements in the 1977 and 1979 returns and dismissed these counts on the ground that since the evidence at trial presented no disputed factual element distinguishing them from the evasion charges for 1977 and 1979, the lesser-included false statement counts should not have been submitted to the jury. *Id.* at 312–14. A chart in the margin shows the charges, verdict, and outcome on the prior appeal for each of the nine counts.[1]

Following the remand, the Government sought to retry Citron on count 2, tax evasion for 1978. Citron moved to dismiss that count or, in the alternative, to suppress on collateral estoppel grounds evidence regarding facts that the jury in his first trial had determined in his favor. Judge Weinstein initially rejected Citron's contentions in all respects. Upon reconsideration, however, the Judge granted Citron's motion to suppress evidence. The Judge ruled that the doctrine of collateral estoppel barred the Government from offering proof that Citron rather than his parents owned the Hutton accounts in any years and that Citron committed tax law violations for 1977 and 1979. The Judge also precluded the Government from proceeding under the "cash expenditures" method of proving unreported income be-

1.

| Tax Code Violation | Tax Year | | |
| --- | --- | --- | --- |
| | 1977 | 1978 | 1979 |
| evasion 26 U.S.C. § 7201 | Count 1 ACQUITTED vacated and remanded on appeal | Count 2 GUILTY | Count 3 ACQUITTED |
| filing false returns 26 U.S.C. § 7206(1) | Count 4 GUILTY dismissed on appeal | Count 5 NOT REACHED | Count 6 GUILTY dismissed on appeal |
| aiding and assisting parents in filing false returns 26 U.S.C. § 7206(2) | Count 7 ACQUITTED | Count 8 ACQUITTED | Count 9 ACQUITTED |

cause, in the Judge's view, that method would involve evidence of Citron's financial activities in 1977 and 1979.

The Government appeals from the District Court's order suppressing evidence. The interlocutory appeal is proper under 18 U.S.C. § 3731 (1982 & Supp. IV 1986).

### Discussion

■ The doctrine of collateral estoppel, as applied in criminal prosecutions, bars the Government from relitigating an issue decided in a defendant's favor by a valid final judgment. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970); *United States v. Mespoulede,* 597 F.2d 329, 332 (2d Cir.1979). The burden is on the defendant "to establish that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict." *United States v. Cala,* 521 F.2d 605, 608 (2d Cir.1975); *see United States v. Medina,* 709 F.2d 155, 156 (2d Cir.1983); *United States v. Tramunti,* 500 F.2d 1334, 1346 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). When, as is usually the case, the previous acquittal was based on a general verdict, the court must 'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. at 1194 (quoting Mayers & Yarbrough, *Bis Vexari: New Trials and Successive Prosecutions,* 74 Harv.L.Rev. 1, 38–39 (1960)). Though the court should avoid making the defendant's burden overly difficult by "straining to postulate 'hypertechnical and unrealistic' grounds on which the jury could conceivably have rested its conclusions," *United States v. Mespoulede, supra,* 597 F.2d at 333 (quoting *United States v. Jacobson,* 547 F.2d 21, 23 (2d Cir.1976), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1581, 51 L.Ed.2d 793 (1977)), it has been recognized that "[s]ince it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant." *United States v. Tramunti, supra,* 500 F.2d at 1346; *see United States v. Seijo,* 537 F.2d 694, 697 (2d Cir.1976) (defendant's burden is "a heavy one"), *cert. denied,* 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977); *United States v. Medina, supra,* 709 F.2d at 156 n.** (same).

The defendant's burden is particularly difficult to satisfy when the jury has reached inconsistent verdicts. Such verdicts, whether based on error, confusion, or a desire to compromise, give little guidance as to the jury's factual findings. In this context, "principles of collateral estoppel—which are predicated on the assumption that the jury acted rationally and found certain facts in reaching its verdict—are no longer useful." *United States v. Powell,* 469 U.S. 57, 68, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984); *see Standefer v. United States,* 447 U.S. 10, 23 n. 17, 100 S.Ct. 1999, 2007 n. 17, 64 L.Ed.2d 689 (1980) (inconsistency of verdict "is reason, in itself, for not giving preclusive effect to the acquittals").

Applying the foregoing principles to the present case, we determine that the District Court's suppression of evidence was unwarranted.

### A. Hutton Accounts

■ Citron argues that his acquittal on the aiding and assisting charges (counts 7–9) establishes that the jury necessarily decided that the Hutton accounts belonged to his parents. He asserts that the aiding and assisting charges included two elements: (1) that Citron helped prepare his parents' returns and (2) that the returns were false. Since it was undisputed that Citron prepared his parents' returns, Citron contends that the jury must have found the returns to be accurate. He argues that the only way his parents' returns, which included income from the Hutton accounts, could be accurate was if the accounts belonged to them. Thus, in Citron's view, the Government may not use deposits to and with-

drawals from the accounts as evidence of Citron's income, nor may the Government attribute to him interest, dividends, and capital gains earned on the accounts.

Even if Citron's analysis of the aiding and assisting acquittals is accurate,[2] he has failed to show that the verdict as a whole supports his conclusion that the jury determined the ownership issue in his favor. In addition to the acquittals on which Citron relies, the jury *convicted* him of evasion for 1978, the very charge that the Government seeks to retry. That conviction raises significant doubt as to whether the jury found that the stock accounts belonged to Citron's parents. As we noted on Citron's prior appeal, "[T]he jury could well have concluded, in finding appellant guilty of tax evasion, that the stock in his parents' accounts, and the income derived therefrom, belonged to him." *United States v. Citron, supra*, 783 F.2d at 318. Taken together, the acquittal for aiding and assisting and the conviction for evasion are inconclusive on the ownership issue. The jury may have found for the purposes of the aiding and assisting counts that Citron's parents owned the accounts, yet for the purposes of the evasion charge, the one sought to be retried, it is likely that the jury found that Citron owned the accounts. In light of this inconsistency, it cannot be said that the jury "necessarily" decided the ownership issue in Citron's favor. *See United States v. Powell, supra*, 469 U.S. at 68, 105 S.Ct. at 478; *Standefer v. United States, supra*, 447 U.S. at 23 n. 17, 100 S.Ct. at 2007 n. 17.

*United States v. Mespoulede, supra*, on which Citron relies, does not control the present case. In *Mespoulede*, the defendant was charged with one count of conspiracy to distribute cocaine and one count of possession with intent to distribute. The jury acquitted on the possession charge and *failed to reach a verdict* on the conspiracy count, resulting in a mistrial on that count. We held that on retrial of the

conspiracy count, the Government could not offer evidence of possession because the first jury had necessarily decided the issue in the defendant's favor. *Id.* at 335–36. Other courts have reached similar results where the jury fails to reach a verdict on the count to be retried and acquittals on other counts establish that the jury necessarily found facts in the defendant's favor. *See, e.g., United States v. Gornto*, 792 F.2d 1028, 1034–36 (11th Cir.1986); *United States v. Quintana–Quinones*, No. 86 Cr. 097, slip op. (S.D.N.Y. Feb. 6, 1987) [available on WESTLAW, 1987 WL 6435].

In contrast with *Mespoulede*, Citron was *convicted* of the offense that is the subject of the retrial. The conviction on the 1978 tax evasion count is significant because it indicates that the jury found the relevant facts adversely to the defendant, notwithstanding the acquittals on other related counts. While an acquittal accompanied by a failure to reach a verdict may appropriately give rise to collateral estoppel if the acquittal necessarily determined facts in the defendant's favor, *e.g., United States v. Mespoulede, supra*, an acquittal accompanied by a conviction on the count sought to be retried does not have a similar preclusive effect; the conviction casts doubt on whatever factual findings might otherwise be inferred from the related acquittal, *see United States v. Price*, 750 F.2d 363, 366 (5th Cir.) (*Mespoulede* inapplicable where defendant was convicted of count sought to be retried), *cert. denied*, 473 U.S. 904, 105 S.Ct. 3526, 87 L.Ed.2d 651 (1985); *United States v. Jones*, 404 F.Supp. 529, 544 (E.D.Pa.1975) (collateral estoppel inapplicable "to an acquittal on one count of an indictment where the defendant was found guilty on another count which was tried at the same time"), *aff'd mem.*, 538 F.2d 321 (3d Cir.1976); *see also United States ex rel. Hoffer v. Morrow*, 626 F.Supp. 786, 791 (N.D.Ill.1985) ("when a defendant is inconsistently convicted and

---

2. We note that the jury could have acquitted Citron of aiding and assisting without determining that the stock accounts belonged to his parents. For example, the jury might have thought that the accounts belonged to Citron, that his

parents' returns inaccurately included income associated with the accounts, but that their returns were not materially false simply because their income was overstated.

acquitted, the court cannot assume that facts were found in the defendant's favor"), aff'd, 797 F.2d 348 (7th Cir.1986). We recognized this difference in *Mespoulede* when we distinguished *United States v. Jones, supra,* on the ground that in *Jones,* "the first jury *convicted* the defendant on the count that was retried, and the court pointed out that the jury's acquittal on a different count did not determine the issue sought to be precluded on retrial." *United States v. Mespoulede, supra,* 597 F.2d at 337 n. 13 (emphasis in original).

Citron argues, finally, that the evasion conviction does not eliminate the preclusive effect of the aiding and assisting acquittals because the conviction might have been based on evidence other than Citron's ownership of the Hutton accounts, such as evidence that Citron failed to report income from a bookmaking operation. This argument is without merit. The Government's case at trial consisted primarily of showing that the Hutton accounts were Citron's and that funds deposited and withdrawn from those accounts, as well as interest, dividends, and capital gain earned on the accounts, represented income to Citron. Though the Government also offered evidence as to the source of some of the Hutton deposits, Citron's ownership of the accounts was central to the Government's case. *See* Defendant's Memorandum of Law in Support of Motion to Dismiss at 8, *United States v. Citron,* No. 84 Cr. 600 (E.D.N.Y.1987) ("A review of the Government's evidence at the first trial demonstrates that the essential nature of the Government's claim regarding 1978 is that the E.F. Hutton brokerage accounts and the income therein really belonged to Mr. Citron."). Even if the jury might have convicted on the 1978 evasion count without deciding whether Citron owned the Hutton accounts, an unlikely event, Citron has not established that the jury "necessarily" decided the ownership issue in his favor.

**B. Tax Law Violations for 1977 and 1979**

■ The District Court held that in Citron's retrial for tax evasion for 1978, the Government could not present evidence regarding tax law violations for the years 1977 and 1979. Normally, such "similar act" evidence would be admissible under Fed.R.Evid. 404(b) to show intent, plan, scheme, or absence of mistake. *See, e.g., United States v. Ausmus,* 774 F.2d 722, 727–28 (6th Cir.1985). However, collateral estoppel bars such evidence if a prior jury has necessarily determined that the defendant never committed the similar act. *See, e.g., Albert v. Montgomery,* 732 F.2d 865, 869–70 (11th Cir.1984); *Wingate v. Wainwright,* 464 F.2d 209, 214 (5th Cir.1972). Citron argues that his acquittals of tax evasion for 1977 and 1979 bar the Government from offering proof that he underreported his income in those years. The Government responds that the acquittals are not dispositive because the jury also convicted Citron of filing materially false returns for 1977 and 1979. Though the false return charges were ultimately dismissed on appeal, the Government contends that the jury's verdict was inconsistent, thereby eliminating any collateral estoppel effect.

■ We have previously considered the preclusive effect of a verdict like the one in this case in *Harary v. Blumenthal,* 555 F.2d 1113 (2d Cir.1977). Harary was charged in a three-count indictment with conspiring to bribe an IRS agent, bribing an IRS agent, and paying a gratuity to an IRS agent. The jury acquitted him of conspiracy and bribery but convicted him of paying a gratuity. On appeal, Harary successfully argued that the lesser-included gratuity count should not have been submitted to the jury because there was no disputed factual element distinguishing it from the greater bribery count. *United States v. Harary,* 457 F.2d 471, 475–80 (2d Cir.1972). This is the same argument that Citron successfully pressed on this Court in his prior appeal with respect to the evasion and false return charges. *See United States v. Citron, supra,* 783 F.2d at 312–14 (relying on *Harary* ).

Following the criminal proceedings, Harary was disbarred from practice before the Internal Revenue Service based on the same bribery conduct for which he had

previously been prosecuted. On appeal from the administrative ruling disbarring him, Harary argued that his acquittal of bribery in the criminal trial precluded proof as to his unlawful payment in the subsequent administrative proceeding because the acquittal showed that the jury had necessarily determined that Harary had been entrapped into making the payment. *Harary v. Blumenthal, supra,* 555 F.2d at 1116. This Court rejected Harary's collateral estoppel argument:

> [Harary's] factual premise that the jury's verdict constituted a finding of entrapment is clearly incorrect in the circumstances of this case. As noted above, the jury at appellant's trial, while acquitting him of the bribery charges, found him guilty of giving the IRS agent a gratuity. This court later stated that the jury's verdict amounted to "a compromise." *United States v. Harary, supra,* 457 F.2d at 479. The jury, in the court's view, could not rationally have concluded that appellant had been entrapped by the IRS into giving a bribe but not entrapped into giving a gratuity. *Id.* at 478. From such a compromise verdict it cannot be said that the question of entrapment was "necessarily determined" against the Government, as is required to support a later holding of collateral estoppel....

*Harary v. Blumenthal, supra,* 555 F.2d at 1116.

We find the reasoning in *Harary* persuasive in the circumstances of the present case. The jury's verdict acquitting Citron of evasion yet convicting him of filing false returns for 1977 and 1979, in the absence of any disputed factual element distinguishing the charges, is precisely the sort of "compromise" verdict to which *Harary* declined to give preclusive effect. *See United States v. Citron, supra,* 783 F.2d at 314. Such a verdict is an insufficient basis from which to conclude that the issue of whether Citron committed tax law violations for the years 1977 and 1979 was necessarily determined in Citron's favor. *See United States v. Powell, supra,* 469 U.S. at 68, 105 S.Ct. at 478; *Standefer v. United States, supra,* 447 U.S. at 23 n. 17, 100 S.Ct. at 2007 n. 17. Though Citron's convictions for filing false returns were subsequently vacated on appeal, they are appropriately considered in our assessment of the verdict's preclusive effect. Collateral estoppel depends on the jury's assessment of the facts in light of the charges as presented at trial. *See Ashe v. Swenson, supra,* 397 U.S. at 444, 90 S.Ct. at 1194. Moreover, it would be improper to look only to the evasion acquittals since the jurors might not have acquitted Citron of those charges if they did not then believe that they could convict on the false return charges. *See Harary v. Blumenthal, supra,* 555 F.2d at 1117 n. 2.

Citron argues that *Harary* does not apply to this case because Harary sought to preclude evidence in a civil proceeding while Citron seeks the benefits of collateral estoppel in a criminal prosecution. It is true that the disbarment proceedings in *Harary* were not criminal. Moreover, the Court pointed out that Harary's acquittal in the criminal case, where the standard of proof was beyond a reasonable doubt, could not have preclusive effect in a disbarment proceeding involving a lower standard. *Harary v. Blumenthal, supra,* 555 F.2d at 1116. Nevertheless, the opinion makes clear the panel's view that even if the standards of proof had been the same, Harary failed to make the requisite showing that the criminal jury had necessarily found facts in his favor. *Id.* The Court's analysis of the compromise verdict was unrelated to the standard of proof in the disbarment proceeding. We find that analysis persuasive here. *See Standefer v. United States, supra,* 447 U.S. at 23 n. 17, 100 S.Ct. at 2007 n. 17 (citing *Harary* in declining to give preclusive effect to an inconsistent criminal verdict in a subsequent *criminal* prosecution).[3]

---

3. Since we reject Citron's collateral estoppel argument because of the jury's conviction on the 1977 and 1979 false return charges, we need not consider the Government's alternative argument that the conviction for tax evasion for 1978 itself casts sufficient doubt on the 1977 and 1979 evasion acquittals so as to render collateral estoppel unavailable.

### C. Cash Expenditures Method of Proof

 Under the cash expenditures method of proving unreported income, the reported income received by a taxpayer during a given period is compared with his expenditures that are not attributable either to his resources on hand at the beginning of the period or to non-taxable receipts during the period. "A substantial excess of expenditures over the combination of reported income, non-taxable receipts, and cash on hand may establish the existence of unreported income." *United States v. Citron, supra,* 783 F.2d at 310; *see Holland v. United States,* 348 U.S. 121, 124–25, 75 S.Ct. 127, 129–30, 99 L.Ed. 150 (1954) (discussing related "net worth" method). At Citron's first trial, the Government sought to show an excess of expenditures over reported income for the period 1977 to 1979.

The District Court ruled that at Citron's retrial, the Government could not use the cash expenditures method. The Court reasoned that since the Government was collaterally estopped from proving tax violations for 1977 and 1979, any evidence of Citron's expenditures and income in those years would have to be accompanied by a jury instruction that his tax activities were lawful. This, in the Court's view, would unduly confuse the jury. *See* Fed.R.Evid. 403.

Because we have concluded that the Government is not collaterally estopped from offering evidence of Citron's alleged tax violations for 1977 and 1979, the Government should not be foreclosed on that basis from using the cash expenditures method. At Citron's retrial, the Government will be permitted to offer evidence concerning expenditures in 1977 and 1979 to the extent consistent with Fed.R. Evid. 403 and 404(b).

The order of the District Court is reversed.