The UNITED STATES of America,

v.

Joseph MASSINO, Defendant.

No. 02–CR–307 (NGG).

United States District Court,
E.D. New York.

March 24, 2004.

David Breitbart, David Breitbart, Attorney at Law, David Stern, Rothman, Schneider, Soloway & Stern, P.C., Flora Edwards, New York, NY, for Defendant(s).

Greg D. Andres, Jim Walden, Brooklyn, NY, for Plaintiff.

*MEMORANDUM & ORDER*

GARAUFIS, District Judge.

Now before the court is defendant Joseph Massino's ("Massino's") motion to dismiss the predicate acts in the instant RICO/RICO conspiracy indictment that charge him with the 1981 murders of Alphonse "Sonny Red" Indelicato, Philip "Philly Lucky" Giaccone, and Dominick "Big Trin" Trinchera (predicate acts four, five, and six of the indictment at the time these motions were submitted). Massino has also moved on separate grounds to dismiss predicate acts three, four, five, six, seven, eight, nine, and ten of the present indictment-all of the alleged predicate acts in the indictment that took place between October of 1979 and October of 1984. For the reasons explained below, the motions are DENIED.

**Factual Background**

On October 4, 1984, Massino was charged in a superseding indictment with RICO and RICO conspiracy in the Southern District of New York, and the case was tried under the docket number SSSS 81–CR–803 RWS. Defendant's Memorandum of Law ("DML") at 3. Three of the predicate acts charged were conspiracies to murder Indelicato, Giaccone, and Trinchera. *Id.* On June 3, 1987, a jury acquitted Massino of both the substantive RICO charges and the RICO conspiracy. Specifically, the jury found that Massino had committed three of the other predicate acts charged, but that the government had not proven its case with respect to the Indelicato, Giaccone, and Trinchera murder conspiracies. Defendant's Reply Memorandum ("DRM") Exh. B. In addition, because all of the three predicate acts that the jury found Massino had committed took place at least five years before the 1984 indictment, the substantive RICO count was barred by a five year statute of limitations. To satisfy the statute of limitations for the RICO conspiracy count, on the other hand, the government needed only to prove that the RICO conspiracy, as opposed to any of the individual predicate acts charged, lasted into the period five years before the indictment. Therefore,

Judge Sweet submitted a supplemental verdict question to the jury, and in his supplemental charge to the jury on this question and on the jury verdict sheet itself Judge Sweet asked whether the charged RICO conspiracy had continued past October, 1979. 1987 Trial Transcript ("1987 Tr.") at 3021. The jury returned a verdict of "no" to that question; thus, Massino was acquitted of the 1987 RICO conspiracy charge as well. *Id.* at 3023.

**Legal Analysis**

## I. *Double Jeopardy*

■ Massino concedes in his papers that under the Supreme Court's decisions in *United States v. Felix,* 503 U.S. 378, 389, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992) and *Blockburger v. U.S.,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) the government is not prevented by the Double Jeopardy Clause of the Fifth Amendment from now charging Massino with murdering Indelicato, Giaccone, and Trinchera, even though Massino was already prosecuted in 1987 for conspiring to murder those three men. Under *Blockburger* and *Felix* there is no double jeopardy bar against these new charges, in the basic sense of that doctrine, because "a substantive crime and a conspiracy to commit that crime are not the 'same offense' for double jeopardy purposes," *Felix,* 503 U.S. at 389, 112 S.Ct. 1377, even if the two charges are based on the same "underlying incidents." *Id.*

## II. *Collateral Estoppel*

Massino asserts that it is actually the incorporation of the doctrine of collateral estoppel into the Fifth Amendment's double jeopardy guarantee by *Ashe v. Swenson,* 397 U.S. 436, 443–445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) that bars the government's current prosecution of him for the murders of Indelicato, Giaccone, and Trinchera. Notwithstanding *Blockburger* and *Felix,* Massino argues that the government is collaterally estopped from now retrying certain issues that were decided by a jury in 1987. While it is true that *Ashe* incorporated the doctrine of collateral estoppel into the Fifth Amendment's guarantee against double jeopardy, that case does not dictate the result Massino seeks. Against the backdrop of *Ashe,* in *United States v. Citron,* 853 F.2d 1055, 1058 (2d Cir.1988), the Second Circuit cogently summarized how a district court must analyze a collateral estoppel claim in a criminal case:

> The doctrine of collateral estoppel, as applied in criminal prosecutions, bars the Government from relitigating an issue decided in a defendant's favor by a valid final judgment. *The burden is on the defendant to establish that the issue he seeks to foreclose from litigation in the present prosecution was necessarily decided in his favor by the prior verdict.* When, as is usually the case, the previous acquittal was based on a general verdict, the court must examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. Though the court should avoid making the defendant's burden overly difficult by straining to postulate hypertechnical and unrealistic grounds on which the jury could conceivably have rested its conclusions, it has been recognized that since it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant.

(Emphases added, citations omitted). The Second Circuit has also held that "[t]he burden [on the defendant] is particularly onerous when the acquittal in the first trial

involves the crime of conspiracy." *United States v. Clark,* 613 F.2d 391, 401 (2d Cir.1979). Massino argues that in acquitting him, the 1987 jury necessarily decided that Massino did not have the intent to kill Indelicato, Giaccone, and Trinchera. Such intent is an element of the currently charged crimes of murdering the same three men. The 1987 jury has already resolved this element of intent in his favor, Massino argues, so the government cannot relitigate the issue. If such relitigation is barred, these predicate acts must be dismissed from the indictment.

The government responds that the 1987 jury could have acquitted Massino of the murder conspiracy charges on the ground that the government failed to prove that Massino had joined an agreement to kill Indelicato, Giaccone, and Trinchera, rather than because the government failed to prove Massino's intent to kill the three victims. If the 1987 jury's verdict were based on lack of agreement rather than lack of intent there is no collateral estoppel problem, since it is only the latter and not the former that is an element of the murder charges in the current indictment.

■ The question for the court to decide, therefore, after examining the "pleadings, evidence, charge and other relevant matter," is whether Massino has carried his burden of proving that the 1987 jury "necessarily" decided that Massino did not intend to cause the deaths of Indelicato, Giaccone, and Trinchera. After conducting such an examination, I conclude that the 1987 jury did not necessarily make such a finding. In particular, I conclude that a rational jury in 1987 could have based its acquittal on the government's failing to prove beyond a reasonable doubt that Massino entered into an agreement to murder Indelicato, Giaccone, and Trinchera.

I make this finding for the following reasons: in his charge to the 1987 jury,

Judge Sweet stated that "the second thing that must be established under the conspiracy is that the defendant whom you are considering knowingly and willfully entered the conspiracy." 1987 Tr. at 2842. Later, Judge Sweet clarified that:

> mere association with a conspirator does not make one a member of the conspiracy. Knowledge of the conspiracy or of an illegal act on the part of a conspirator without participation is not sufficient. There must be something more than mere knowledge, approval, or acquiescence in the objects of the conspiracy."

*Id.* at 2844.

In addition to the problem posed to Massino's argument by the substance of the jury charge, the evidence adduced by the government at the 1987 trial that Massino had actually entered into an agreement that had the purpose of murdering Indelicato, Giaccone, or Trinchera was weak. Massino's defense attorney, Mr. Dawson, began the part of his summation dealing with these three murder conspiracies by saying:

> These conspiracies to murder I think can be dealt with rather quickly. You probably found out today that for the first time that Joseph Massino is not charged with killing any of those people, Trinchera, the Indelicatos, Terricone, no. *Conspiracy, meaning they have to prove he agreed—agreed that they would be killed. Where is the evidence of an agreement?*

Id. at 2730 (emphasis added). Dawson went on in his summation to question the government's evidence of Massino's alleged agreement to murder Indelicato, Giaccone, and Trinchera. He began by attacking the testimony of Special Agent Joe Pistone (also known by his undercover name of "Donnie Brasco"), who testified that Bonnano soldier Lefty Ruggiero said

that Dominick "Sonny Black" Napolitano[1] was upset because Joseph Massino had "screwed up" in dumping one of the bodies of the three victims in question. Dawson then stated "[h]ow else do we know that Joseph Massino was not involved in an agreement to commit murder?" *Id.* at 2738. Dawson reminded the jury of Pistone's testimony that Sonny Black told Pistone all about who committed these three murders without mentioning Joseph Massino at all. Dawson then asked the jury once again, "[h]ow else do we know Joseph Massino is not involved in the conspiracy, in an agreement to commit murder?" *Id.* Dawson then pointed to surveillance photographs taken on the day of the murders where the victims are seen with other people known to have been involved in these killings, but Massino is not in the photographs. Once again, Dawson stated "[h]ow else do we know that Joseph Massino was not involved in an agreement to commit murder?" *Id.* at 2742. Then Dawson pointed out Sonny Black's failure to refer to Massino on tapes where Sonny Black, who was presumably upset with Massino at the time of the recordings for failing to properly dispose of a body, was present. Finally, Dawson finished his closing arguments concerning these murder conspiracy charges by challenging to the jury to find "[a]ny evidence of an agreement by Joseph Massino to kill these people? The government wants you to guess, to assume it." *Id.* at 2745.

The court holds that Mr. Dawson's attempts to sway the jury from finding that his client entered a conspiratorial agreement to kill Indelicato, Giaccone, and Trinchera were persuasive enough to bar the court from finding that the jury *necessarily* acquitted Massino for lack of intent to kill the three victims. In addition to the

persuasive closing arguments, the court also finds that the government presented little, if any evidence at the 1987 trial tying Massino to a conspiratorial agreement to murder Indelicato, Giaccone, and Trinchera. In fact, at the 1987 trial the government presented no informant or other direct eyewitness testimony to prove such an a agreement, nor did it present any written or other physical evidence of an agreement. Instead, the government offered only scant, disputed, and indirect wiretap evidence that Massino entered an agreement, and little if any surveillance placing Massino together with other alleged conspirators before the murders occurred.

Notwithstanding this lack of direct evidence of an agreement presented at the 1987 trial, Massino now points to evidence the government then presented that showed the following: Massino's alleged role in an intra-Bonnano family dispute before the murders; Massino's alleged role in the murders; and surveillance of Massino after the murders. DRM at pp. 5–9. The only items of evidence Massino lists, however, concerning direct proof (as opposed to the prosecutor's assertions or arguments) that Massino entered an agreement to participate in a murder conspiracy, were two alleged statements by Ruggiero to Pistone. One of these statements, the government argued in 1987, meant that Sonny Black was angry with Massino for failing to properly dispose of a body of one of the three victims. 1987 Tr. at 2639. Attorney Dawson, however, effectively questioned in his closing whether these statements were ever made and whether the government's interpretation of them made any sense in light of the other evidence before the jury. The other statement is one in which, Massino now

---

1. Massino is charged in the current indictment with Napolitano's murder as a predicate act.

argues, a tape of Ruggiero implicated Massino in the murders of Indelicato, Giaccone, and Trinchera. On the tape, Ruggiero said "Joey Massino, he got all these men that he wanted, and now he wants me to get the contract ..." 1987 Tr. at 2638–39. But the government's own witness, Pistone, to whom the statement was made, explained on direct examination that Ruggiero was complaining that even though Massino had a lot of men in his crew, Ruggiero was assigned to kill Bruno Indelicato, the son of the already murdered Sonny Red.1987 Tr. at 2131. This evidence does not carry Massino's heavy burden of proving that the jury necessarily found that the government had not proved that Massino had the specific intent to kill the three victims.

With full appreciation of the irony of the government's position, the court agrees that an essential aspect of the government's case in 1987 concerning these three murder conspiracies was weak. Therefore, it was entirely possible that the jury never reached the question of whether Massino intended that Indelicato, Giaccone, and Trinchera be murdered, because if the jury found that Massino did not join a murder conspiracy agreement, any determination by the jury of Massino's intent would have been unnecessary. It is this lack of an obligation to even consider the question of intent, if the jury found there was no agreement, that Massino ignores when he argues that "[t]here is no rational basis on which the jury could have found that Massino had the specific intent to kill the three captains, but voted to acquit because they did not find that he had entered into a conspiratorial agreement." DRM at 10. Under the law of the Second Circuit as stated in *Citron*, it is Massino's burden to show that the 1987 jury necessarily made a determination on the issue of intent, and Massino has not satisfied that burden.

Massino cites *Aparo v. Superior Court for Judicial Dist. of Hartford/New Britain at Hartford*, 956 F.Supp. 118 (D.Conn. 1996), as an example of a case where the state was collaterally estopped on the issue of intent at a second trial. The facts of that case, however, clearly demonstrate why it should be distinguished from the present one. In Aparo's first and only trial she was charged both with acting as an accessory to, and conspiring with, a boyfriend who murdered Aparo's mother. *Id.* at 119. At trial, the prosecution introduced letters Aparo wrote to her boyfriend that the prosecution contended were proof of a murder conspiracy. *Id.* at 122. The boyfriend testified that the agreement outlined in the letters was to murder Aparo's mother, and Aparo admitted that she wrote these letters. *Id.* Aparo also testified, however, that the agreement referred to in the letters was not an agreement to murder the mother, but rather an agreement that Aparo and the boyfriend would run away together. *Id.* This explanation was at least plausibly supported by entries in Aparo's diary and other evidence. *Id.* at 122–23. After the jury acquitted Aparo on the conspiracy count but failed to reach a verdict on the accessory count, the district court barred a retrial on the accessory charge, reasoning as follows:

> Thus the jury, faced with the fact that both [the boyfriend] and [Aparo] admitted that this letter was written, had to decide whether it was evidence that the petitioner had the specific intent that her mother be murdered. The only rational conclusion that the Court can draw from the jury's acquittal of the petitioner on the charge of accessory to commit murder is that the jury concluded that this letter was not evidence that the petitioner had the specific intent that her mother be murdered at the time of the actual killing. Otherwise, the jury rationally would have been com-

pelled to convict the petitioner on the accessory count.

*Id.* at 122–123. In *Aparo,* unlike Massino's 1987 case, the defendant conceded that she had entered an agreement with the alleged coconspirator. The only thing the jury could have grounded its acquittal on, therefore, was a lack of intent to kill the victim. By contrast, Massino vigorously disputed that he had ever reached an agreement with his alleged coconspirators, giving a rational jury grounds to acquit on that basis, rather than on the basis that he lacked intent that the victims be killed.

In a post-argument submission Massino also cites *United States v. Vozzella,* 124 F.3d 389, 391 n. 1 for the proposition that because "to establish a conspiratorial agreement, the Government must demonstrate that the conspirators possessed at least the degree of criminal intent necessary for the substantive offense itself," *citing United States v. Hendrickson,* 26 F.3d 321, 333 (2d Cir.1994), the element of intent is a "condition precedent to a conspiratorial agreement." Defendants March 23 Letter at 2. In fact, the cited language from the Second Circuit does not establish that the element of intent is a condition precedent to a conspiratorial agreement; rather, it establishes that the element of intent is a condition precedent to a conviction for the crime of conspiracy. Therefore, if Massino had been convicted of conspiracy at the first trial, the court would know that the jury had necessarily decided that Massino did have the requisite intent. It does not therefore follow, however, that because Massino was acquitted of conspiracy the jury found that Massino did not have the requisite intent. Instead, it means the jury found that the government failed to meet its burden of proof with respect to one of the elements of the crime of conspiracy. One of these elements is a level of intent sufficient to be guilty of the underlying substantive offense, and another is joining an agreement

with the purpose of carrying out that intent. Agreement is a separate element from intent in a conspiracy charge, and the passages cited by Massino in his post-argument submission do not demonstrate otherwise.

In addition, Massino argues that the 1987 jury found that Massino was not "involved" in the murders of Indelicato, Giaccone, and Trinchera. By charging Massino now with aiding and abetting those murders, he argues, the government is attempting to try Massino again for being "involved" in those crimes. Massino claims both that such "involvement" was the thrust of the government's case in 1987 and that Judge Sweet's jury instructions required that jury make such a finding of "involvement" in order to convict. Therefore, Massino argues, the government should not be able to try him again for the crime of being "involved" in the deaths of these three men, or, in the language of collateral estoppel, the government should be estopped from relitigating the issue of whether Massino was "involved" with the Indelicato, Giaccone, and Trinchera murders.

The problem with this argument is that the government did not charge Massino in 1987 with being "involved" in the Indelicato, Giaccone, and Trinchera murders. Rather, it charged Massino with conspiring with others to commit these murders. It was the crime of conspiracy, with its particular requirement that the jury find that Massino had joined an agreement, that the government charged in 1987. A finding of mere "involvement," therefore, would not have been sufficient for a jury to find Massino guilty of these murder conspiracies in 1987. The jury could have found that Massino did not join a murder conspiracy agreement without deciding the legally unnecessary question of whether or

not Massino was in some way "involved" in these deaths.

Massino stresses that, like in 1987, the government does not now attempt to prove that Massino was a "shooter" in the Indelicato, Giaccone, and Trinchera murders, but rather an aider and abettor with a similar "role" in the killings as the government attempted to prove when it charged Massino with murder conspiracy in 1987. This argument too must fail, however, because the Second Circuit has held that conspiracy and aiding and abetting are different crimes with different elements, even when the same defendant is charged with both crimes arising out of the same events:

> [W]e note that there is nothing inconsistent in our determination that the evidence was insufficient with respect to the conspiracy count but sufficient with respect to the aiding and abetting count. The two offenses are separate and distinct. The essence of conspiracy is proof of a conspiratorial agreement while aiding and abetting requires there be a "community of unlawful intent" between the aider and the principal. While a community of unlawful intent is similar to an agreement, it is not the same. Thus, a defendant may wittingly aid a criminal act and be liable as an aider and abettor ... but not be liable for conspiracy, which requires knowledge of and voluntary participation in an agreement to do an illegal act.

*United States v. Tyler,* 758 F.2d 66, 70–71 (2d Cir.1985) (internal citations omitted). It is for being a member of this type of "community of unlawful intent" that Massino may be tried in the current prosecution, notwithstanding the fact that the 1987 jury found that he did not enter a "conspiratorial agreement" to commit the murders of Indelicato, Giaccone, and Trinchera.

The government also correctly cites *United States v. Clark,* 613 F.2d 391 (2d Cir.1979) and *United States v. Jackson,* 778 F.2d 933 (2d Cir.1985) (Friendly, *J.*) in response to this last argument by Massino. In both of these cases the government charged defendants both with conspiracy to import or distribute narcotics and with narcotics possession, importation, or distribution. After juries acquitted the defendants of their respective conspiracy charges and deadlocked on the substantive charges of possession, importation, or distribution, the government moved to retry the defendants on the substantive charges. In both cases, the Second Circuit held that the government was not collaterally estopped by the conspiracy acquittals from retrying the defendants on the substantive charges, because the juries in the first trials could have acquitted the defendants of conspiracy by finding that the government had failed to prove an agreement, leaving open the question of whether the defendants actually possessed, imported or distributed drugs. These cases are generally helpful to the government in that they explain or demonstrate why cases like *United States v. Mespoulede,* 597 F.2d 329 (2d Cir.1979) (cited by Massino at oral argument), should be distinguished. In *Mespoulede* the jury acquitted the defendant of the substantive crime (including aiding and abetting) at the first trial, thus foreclosing the government from proving a necessary element of conspiracy at a second trial. In *Clark* and *Jackson,* however, it was the conspiracy acquittal that came first, so the second jury was not foreclosed from making a finding of intent, because the jury could have acquitted for lack of proof of a conspiratorial agreement. *See Jackson,* 778 F.2d at 939–940.

But *Clark* and *Jackson* were also cases where the conviction at a defendant's second trial on the substantive charges, after a conspiracy acquittal, were at least possibly convictions for aiding and abetting. *See Jackson,* 778 F.2d at 940 ("On the

other hand, the jury at the second trial could rationally have found, without eroding the first jury's acquittal on the conspiracy count, that Jackson either had possession of heroin with intent to distribute *or aided and abetted Whyte in his possession with such intent.* We have recently pointed out that the offenses of conspiring and of aiding and abetting, while closely allied, are distinct.") (emphasis added, citation omitted); *see also Clark,* 613 F.2d at 401 (quoting from the district court's charge to the jury in the second trial, including a charge on aiding and abetting). Thus, these cases both demonstrate that the Second Circuit has permitted a defendant to be tried for aiding and abetting a crime after the defendant was acquitted of conspiracy to commit the same underlying acts. These decisions are unsurprising, because acquittal for lack of proof of a conspiratorial agreement has no bearing on whether a second jury could find, examining the same acts, that the defendant had joined a "community of unlawful intent."

■ Nor is it legally relevant that the government's proof in the current prosecution may, as part of the effort to prove the aiding and abetting charge, include evidence from which a jury theoretically could also find that Massino entered a conspiratorial agreement to murder Indelicato, Giaccone, and Trinchera. Massino is not being tried again for conspiracy connected with these three murders, and "a mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *Felix,* 503 U.S. at 386, 112 S.Ct. 1377. *See also id.* at 387, 112 S.Ct. 1377 (holding that "the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct").

III. *Effect of 1987 Supplemental Jury Verdict Question on Dates of Conspiracy*

■ Massino has also moved to have all of the alleged predicate acts in the current indictment that occurred between October of 1979 and October of 1984 stricken from the indictment. He argues that the 1987 jury's supplemental verdict has already determined that the "enterprise" alleged in the 1987 case did not "continue in existence" between October of 1979 and October of 1984. Therefore, Massino argues, the government is collaterally estopped from now charging him with any predicate acts "related" to the same enterprise during that period. Massino misrepresents the meaning of the 1987 supplemental jury verdict, and his claim can be easily rejected by examining the question actually put to the jury.

As Massino himself notes, the supplemental question that Judge Sweet actually put before the jury was the following:

Has the government established that the racketeering enterprise conspiracy which you found to have existed under Count 1 of the indictment continued in existence after October 9, 1979, which you have already found to have existed.

DRM at 14. The jury answered the question in the negative. But Massino ignores the fact that in deciding Count 1 of the 1984 indictment the jury was deciding on an alleged RICO *conspiracy.* Thus, the jury's verdict does not mean that the "Government failed to establish that the enterprise continued in existence after October 9, 1979," DRM at 14, but that the government failed to establish that the particular RICO conspiracy charged in the 1984 indictment continued in existence after October of 1979.

Therefore, even assuming that the enterprises charged in both the 1984 indictment and the present indictment are iden-

tical (and they are not, because a RICO enterprise is defined by the terms of the particular pattern of racketeering activity charged, notwithstanding the fact that a particular enterprise is carried out by members of the same "crime family"), the jury's verdict did not say anything about the enterprise itself, but rather only the particular conspiracy charged in the 1984 indictment. *See United States v. Russotti,* 717 F.2d 27, 35 ("As for their acquittal on the RICO conspiracy count, even assuming that the jury concluded that they were not members of the enterprise, this does not preclude a subsequent conspiracy conviction, provided the two conspiracies are distinct criminal schemes."). And the conspiracy charged in the 1984 indictment is clearly a legally distinct criminal scheme from the conspiracy charged in the present indictment—numerous alleged coconspirators are different and nearly all of the alleged predicate acts are different.[2] The alleged predicate acts are different because both the events and the alleged crimes are different. *See Russotti,* 717 F.2d at 33 (laying out a test for whether two RICO counts charge two distinct patterns of racketeering activity.).

Finally, because all of the alleged predicate acts in the current indictment that took place between 1979 and 1984 (except for the three murders/murder conspiracies discussed in Part II above) were not the subject of the 1987 jury's deliberations, Massino cannot meet his burden of showing that the 1987 jury "necessarily" found that these particular predicate acts were "related" to the enterprise in the case now before the court. It is this same heavy burden laid out in *Citron* and discussed in Part II above that Massino must meet in order to collaterally estop the government from arguing that the predicate acts in

question are "related" to the charged enterprise.

**Conclusion**

For the reasons explained above, Massino's motion to collaterally estop the government from arguing that Massino had the specific intent to murder Indelicato, Giaccone, and Trinchera is DENIED. Massino's motion to collaterally estop the government from proving that all of the predicate acts alleged in the current indictment are "related" to the charged enterprise is also DENIED.

SO ORDERED.

---

**2.** The three murders/murder conspiracies discussed in Section II above are the only alleged predicate acts common to both indictments.