UNITED STATES OF AMERICA, et al.

v.

Richard L. MATTHEWS,

United States of America, et al.

v.

Angela Matthews,

Nos. Civ.A. 03–CV–4448,
Civ.A. 03–CV–6194.

United States District Court,
E.D. Pennsylvania.

May 20, 2004.

528

Richard M. Bernstein, Virginia A. Gibson, U.S. Attorney's Office, Philadelphia, PA, for Plaintiffs.

Richard L. Matthews, Collegeville, PA, pro se.

Milton H. Baxley, II, Gainesville, FL, for Defendant.

Angela Matthews, Collegeville, PA, pro se.

### MEMORANDUM OPINION

SAVAGE, District Judge.

The plaintiffs, the United States of America, the Internal Revenue Service and Revenue Officer Lawrence M. Dolan (collectively the "Internal Revenue Service"), sought to enforce summonses requiring the defendants, a husband and wife who had been under criminal investigation by the IRS for almost a decade, to answer questions and produce documents for the stated purpose of collecting federal tax liability.[1] In response to the summonses, the defendants appeared at the local IRS office separately and refused to answer questions regarding their assets and sources of income, asserting their Fifth Amendment privilege against self-incrimination.[2]

The IRS contends that the invocation of the privilege was improper for two reasons. First, it argues that the defendants' assertion of the privilege was a prohibited blanket invocation. Second, the IRS claims that the defendants have no basis for asserting the privilege because the information sought is for use in the collection of tax liabilities and relates to the existence of assets and not to their sources.

The parties submitted briefs and a hearing was held on January 6, 2004. After considering the arguments and the facts and circumstances in each case, we issued findings of fact and conclusions of law. We concluded that the defendants asserted the Fifth Amendment privilege in response to specific questions, and that their apprehension of a criminal prosecution and the potential use of the subpoenaed evidence against them in such a prosecution was substantial and genuine. Accordingly, we refused to enforce the summonses.

We now issue this memorandum opinion to supplement our findings and to explain our reasoning.

The summonses sought testimonial and documentary evidence. The defendants did not, as the IRS suggests, refuse to produce documents. They informed the IRS that they did not have any documents responsive to the requests. *In re: Richard L. Matthews*, Hearing, at 14–15 (May 29, 2003). Consequently, it was not necessary to consider the application of the act-

---

1. The summonses were issued pursuant to 26 U.S.C.A. § 7602.

2. Defendant Richard Matthews appeared at the IRS office on May 29, 2003, and Angela Matthews, on September 9, 2003. In the intervening time, an action was instituted against Richard Matthews to enforce the summons issued to him. A hearing on the action was continued to enable the defendant's attorney to appear. At that time, the IRS stated that it intended to issue a summons to the defendant Angela Matthews, which it later did. The enforcement actions were consolidated at the hearing held on January 6, 2004.

of-production doctrine. *See United States v. Hubbell,* 530 U.S. 27, 120 S.Ct. 2037, 147 L.Ed.2d 24 (2000). Thus, our inquiry was confined to the refusal to answer certain questions on Fifth Amendment grounds.

Because the defendants undisputedly have been under criminal investigation and the statute of limitations for criminal charges has not expired, we looked at each question regarding assets, income and expenses to determine whether the privilege was justified with respect to the particular question. *See United States v. Yurasovich,* 580 F.2d 1212, 1220–21 (3d Cir.1978). Construing the privilege liberally, especially in the context of this case, we determined that the questions that the defendants refused to answer all implicated self-incriminating information because they required the defendants to supply evidence of a necessary element of tax-related crimes or links in the chain of evidence needed to prosecute them for the same crimes which had been the subject of the IRS criminal investigation. *See United States v. Mahady & Mahady,* 512 F.2d 521, 525–26 (3d Cir.1975).

### Blanket Assertion of the Privilege

 While the Fifth Amendment provides a privilege against self-incrimination, witnesses cannot relieve themselves of their obligations to answer questions by a "mere blanket invocation" of the privilege. *Nat'l Life Ins. Co. v. Hartford Acc. & Indem. Co.,* 615 F.2d 595, 597–98 (3d Cir. 1980). A witness must invoke the privilege after being asked specific questions. *Id.* at 598–600.

The defendants appeared at the IRS office with counsel who noted at the outset that his clients had been under criminal investigation for nine years, starting in 1991. He counseled his clients on the record that whatever they said could be used against them in a future criminal prosecution. *In re: Richard L. Matthews,* Hearing, at 6 (May 29, 2003); *In re: Angela Matthews,* Hearing, at 5 (Sept. 9, 2003). The defendants then answered certain questions, including their residences, dates of birth, social security numbers, number of dependants, and employment status. They refused to answer questions regarding current assets and sources of income, invoking their Fifth Amendment privilege.

### Real and Substantial Apprehension of Prosecution

 The court must determine whether the person invoking the privilege has a reasonable basis to fear danger from giving answers or is clearly mistaken about the potential consequences of his providing information. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87, 71 S.Ct. 814. The protection extends not only to direct answers which are incriminating but to those responses which could establish a "link in the chain of evidence" necessary to prosecute the witness. *Yurasovich,* 580 F.2d at 1215 (quoting *Hoffman,* 341 U.S. at 486, 71 S.Ct. 814).

 "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) (citations omitted). This is not a case where the defendants have an imaginary or generalized concern that providing information to the IRS could incriminate them. It is one where they have a real and substantial fear of prosecution because they have been under criminal investigation by the IRS

for years and are still exposed to criminal prosecution. The apprehension is real and not one contrived to avoid paying taxes.

The defendants had and still have a real apprehension of danger that by answering the IRS's questions and providing documents could lead to evidence necessary to prosecute them for criminal violations. The IRS had conducted a criminal investigation of the defendants for nine years, the last year being 2001. Although no charges have been filed, the IRS is unwilling to represent that none will be filed. Transcript ("Tr.") at 23–24, 27 (Jan. 6, 2004). Furthermore, it refuses to grant immunity from criminal prosecution, even though its own counsel has requested it. Tr. at 32–33. Thus, with the possibility that criminal charges could be brought within the statute of limitations, the defendants had and still have a reasonable apprehension that information they supply the IRS regarding their current assets could lead to the discovery of the sources of those assets during the periods of the criminal investigation.

■ The IRS states that it only wants the information for collection purposes. If so, it could provide immunity. "Once the reason for the privilege ceases, the privilege ceases." *Ullmann v. United States,* 350 U.S. 422, 439, 76 S.Ct. 497, 100 L.Ed. 511 (1956). Its disclaimer that it is not seeking the source of the assets or how the defendants acquired them is belied by its refusal to grant the defendants immunity. *See Yurasovich,* 580 F.2d at 1221. Once in possession of the identity of the asset, the IRS could trace it to its source.

At the hearing, counsel for the IRS conceded that "there might be" an exposure to criminal liability. Tr. at 24. He agreed that information gathered during the collection process could be shared with the criminal investigation division. Tr. at 27. He conceded that if providing the information produced a link in the chain of evidence needed for a criminal prosecution, the defendants have a right to assert their privilege. Indeed, counsel admitted that the IRS does not want to give immunity because it wants to reserve the right to prosecute. Tr. at 33.

The message reasonably interpreted by the defendants is that the IRS may still prosecute them. Their fear of prosecution is magnified by the IRS's refusal to grant the immunity that its own counsel recommended. Under the circumstances, we cannot conclude that the defendants are clearly mistaken in their apprehension of self-incrimination.

### Conclusion

Because the IRS was unwilling to represent that it would not use information gathered in the collection process for possible criminal prosecution of the defendants who had been under criminal investigation for many years and are still exposed to criminal liability, the defendants had and continue to have a real and substantial apprehension that disclosure of information could subject them to prosecution for unfiled or unpaid taxes in any year within the statute of limitations. Therefore, considering the circumstances surrounding the assertion of the privilege and that compelled disclosures would tend to incriminate the defendants or lead to incriminating evidence against them, we determine that invocation of the Fifth Amendment privilege against self-incrimination is appropriate in this case.